**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Jennifer Louise Lavoie</u>

    **v.**                                     Case No. 14-cv-466-PB
                                              Opinion No. 2015 DNH 236
<u>Carolyn W. Colvin,</u>
<u>Acting Commissioner,</u>
<u>U.S. Social Security</u>
<u>Administration</u>

<u>MEMORANDUM AND ORDER</u>

Jennifer Louise Lavoie is a forty-one year old woman from
Warner, New Hampshire who previously worked as an automobile
mechanic, heavy equipment operator, office helper, and store
clerk.  Lavoie applied for disability insurance benefits ("DIB")
and supplemental security income ("SSI") in March 2006, alleging
disability due to degenerative disc disease of the lumbar spine,
obesity, and depression.  In June 2013, an Administrative Law
Judge issued a written decision finding that Lavoie was not
disabled.  Here, Lavoie challenges the Social Security
Administration's denial of her claims.  The Social Security
Commissioner, in turns, seeks to have the ruling affirmed.


### I.   BACKGROUND

Pursuant to Local Rule 9.1, the parties have submitted a
joint statement of stipulated facts (Doc. No. 11).  See LR 9.1.

That joint statement is part of the court's record, and I need
not recount it here.  I discuss facts relevant to the
disposition of this matter as necessary below.


## II. <u>STANDARD OF REVIEW</u>

In accordance with 42 U.S.C. § 405(g), I have the authority
to review the administrative record and the pleadings submitted
by the parties, and to enter a judgment affirming, modifying, or
reversing the final decision of the Commissioner.  That review
is limited, however, "to determining whether the [Administrative
Law Judge] used the proper legal standards and found facts
[based] upon the proper quantum of evidence."  Ward v. Comm'r of
Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  I defer to the
Administrative Law Judge's (ALJ's) findings of fact, so long as
those findings are supported by substantial evidence.  Id.
Substantial evidence exists "'if a reasonable mind, reviewing
the evidence in the record as a whole, could accept it as
adequate to support his conclusion.'"  Irlanda Ortiz v. Sec'y of
Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per
curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs.,
647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's
factual findings are conclusive, even where the record "arguably

could support a different conclusion." Id. at 770.  Findings

are not conclusive, however, if the ALJ derived his findings by

"ignoring evidence, misapplying the law, or judging matters

entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st

Cir. 1999) (per curiam).  The ALJ is responsible for determining

issues of credibility and for drawing inferences from evidence

in the record.  Irlanda Ortiz, 955 F.2d at 769.  It is the role

of the ALJ, not the court, to resolve conflicts in the evidence.

Id.


### III. ANALYSIS

Lavoie filed claims for DIB and SSI in March 2012, alleging

disability as of August 2009.  Doc. No. 11 at 1.  She later

amended her alleged onset date to October 29, 2011.  Id.  After

her claims were initially denied, a hearing was held before an

ALJ in May 2013.  Id.  The ALJ issued a written decision in June

2013, concluding that Lavoie was not disabled.  Id.

In his decision, the ALJ evaluated Lavoie's claims under

the five step process described in 20 C.F.R. §§ 404.1520(a)(4)

and 416.920(a)(4).  The ALJ found at step one that Lavoie had

not engaged in substantial gainful activity since October 29,

2011, her amended alleged onset date.  Tr. at 14.  At step two,

the ALJ determined that Lavoie had severe impairments of

degenerative disc disease of the lumbar spine, obesity, and

depression.  Tr. at 14.  At step three, the ALJ found that
Lavoie's impairments did not meet or equal any of the listed
impairments.  Tr. at 14-16.  The ALJ then concluded at step five
that Lavoie had the residual functional capacity to perform jobs
that existed in significant numbers in the national economy.
Tr. at 22-23.  The ALJ accordingly found that Lavoie was not
disabled.

In August 2014, the Appeals Council denied Lavoie's request
to review the ALJ's decision.  Tr. at 2-7.  As such, the ALJ's
decision constitutes the Commissioner's final decision, and this
matter is now ripe for judicial review.

Lavoie argues that a remand is required because (1) the ALJ
erred in evaluating Lavoie's credibility and subjective
complaints, (2) the ALJ improperly afforded little weight to the
opinion of Lavoie's treating physician, (3) Lavoie's assessed
residual functional capacity is not supported by substantial
evidence, and (4) the Commissioner failed to meet his burden at
step five.  Doc. No. 9 at 1.  For the reasons explained below, I
conclude that the ALJ erred in assigning little weight to
Lavoie's treating physician's opinion, and that a remand is
therefore warranted here.

A treating source's opinion is entitled to controlling
weight so long as that opinion is "well-supported by medically
acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with the other substantial evidence..." 20
C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Even if a treating
source's opinion deserves less than controlling weight, it is
"entitled to deference." SSR 96-2p, 1996 WL 374188 (July 2,
1996), at *4.

To determine how much weight a treating source's opinion
should receive, the ALJ must consider the nature and extent of
the treatment relationship, the opinion's supportability and
consistency with the record as a whole, the treating source's
area of specialization, if any, and any other relevant factors.
See 20 C.F.R. §§ 404.1527(c), 416.927(c).  Where the ALJ
discounts a treating source's opinion, the ALJ is required to
provide "good reasons" for doing so.  20 C.F.R. §§
404.1527(c)(2), 416.927(c)(2).  The ALJ's decision must be
"sufficiently specific to make clear . . . the weight [the ALJ]
gave to the treating source's medical opinion and the reasons
for that weight." SSR 96-2p, 1996 WL 374188, at *5; see also
Jenness v. Colvin, 2015 DNH 167, 15 ("To meet the 'good reasons'
requirement, the ALJ's reasons must be both specific and
supportable.") (internal citations and punctuation omitted).

Here, Lavoie's treating provider was Dr. Francis Milligan,
a primary care physician who treated Lavoie for more than a
decade.  Tr. at 366.  In June 2012, at Dr. Milligan's
suggestion, Lavoie underwent a functional assessment with

physical therapist Christopher Herd.  Tr. at 330-32, 360-62.  At
that assessment, Lavoie complained of difficulty walking,
difficulty with daily activities, headache, numbness and back
pain.  Tr. at 331.  PT Herd noted that Lavoie showed consistent
effort with grip strength testing, but "less than maximal effort
with all lifts limited by back pain."  Tr. at 360.  PT Herd
opined that Lavoie could lift and carry up to ten pounds, could
occasionally sit, stand, walk, bend, kneel, squat, reach, and
drive, but was unable to climb.  Tr. at 361.  He also wrote that
Lavoie could frequently perform fine motor tasks, could lift a
maximum of ten pounds from floor to overhead, and was restricted
to sedentary work.  PT Herd then concluded that Lavoie's
"[o]verall . . . return to work prognosis is fair-poor at this
time secondary to her continued symptoms of pain with mobility
and strength deficits."  Tr. at 330, 360.

    On August 10, 2012, Dr. Milligan drafted a short letter
addressed "To Whom it May Concern."  Tr. at 359.  In that
letter, Dr. Milligan noted that Lavoie had undergone functional
capacity testing "to see if she was able to work," and stated
that Lavoie's "return to work prognosis is fair-poor at this
time."  Tr. at 359.  Dr. Milligan included with his letter PT
Herd's June 2012 assessment.  Tr. at 359-62.

    Dr. Milligan then completed a Physical Residual Functional
Capacity Questionnaire on October 5, 2012.  Tr. at 366-69.  In

that questionnaire, Dr. Milligan described Lavoie's symptoms as "pain, numbness, pain that interferes with mobility, anxiety sensation of something crawling on her skin, fatigue," and noted that Lavoie described her pain as "10/10 on 0-10 pain scale." Tr. at 366.  He then opined that Lavoie's impairments were "reasonably consistent with [her] symptoms and functional limitations and [Lavoie's] experience of pain and that her back impairment and depression caused symptoms that frequently interfered with her attention and concentration needed to perform even simple work tasks and rendered her incapable of performing even low-stress jobs."  Doc. No. 11 at 17 (citing Tr. at 366-67).  To support his opinions, Dr. Milligan cited "imaging reports, flat affect, tearful, reduced mobility, paresthesias, depression, insomnia, tenderness lumbar spine [and] paravertebral muscles and intercostal muscles."  Tr. at 366.  Finally, with respect to Lavoie's functional limitations, Dr. Milligan again deferred to PT Herd's assessment.  Tr. at 367-68; see Tr. 330-32, 360-62.

The ALJ assigned Dr. Milligan's opinion, and PT Herd's functional assessment upon which Dr. Milligan relied, "little weight."  Tr. at 21.  The ALJ discounted these opinions because they were "partially, but not entirely, consistent with or supported by the evidence of record."  Id.  To buttress this conclusion, the ALJ stated that "[n]othing in the record

7

suggests that [Lavoie] would be unable to lift more than 10 pounds" and noted that Lavoie's "daily activities, involving automotive repair, involve greater lifting." Id. The ALJ also noted that Lavoie "demonstrated less than maximal effort with all lifts" during PT Herd's assessment. Id. The ALJ thus found that "this opinion is not entirely credible, and . . . is inconsistent with [Lavoie's] daily activities," and was therefore entitled to little weight. See id.

The ALJ's one-paragraph analysis of Dr. Milligan's opinion was inadequate to explain why that opinion, in its entirety, was entitled to little weight.[1] Dr. Milligan expressed a number of

---

[1] For the sake of argument, I assume here that the ALJ provided a sufficient basis to discount PT Herd's assessment that Lavoie could lift no more than ten pounds. I note, however, that this is a close question. The ALJ rejected PT Herd's assessment largely based on treatment notes in which Lavoie described doing, and wanting to do, mechanical and automotive repair work after her alleged onset date. Tr. at 18 (citing Tr. at 439, 441, 443), 21. Although these treatment notes are open to interpretation, the ALJ reasonably concluded that Lavoie had, in fact, done automotive repair during the spring of 2013. See Irlanda Ortiz, 955 F.2d at 769 (explaining that it is the ALJ's responsibility, not the role of a reviewing court, to resolve conflicts in the evidence, and to draw reasonable inferences from the record). It was also reasonable for the ALJ to infer that doing automotive repair was inconsistent with PT Herd's assessment regarding the extent of Lavoie's exertional limitations. See Tr. at 18. Nonetheless, the ALJ did not explain why the limited records of Lavoie repairing cars showed that she could lift more than ten pounds on a sustained basis, or cite a medical opinion that conflicted with PT Herd's assessment regarding the amount Lavoie could lift. Regardless, for the purpose of this order, I assume that the ALJ provided an adequate reason to discount this aspect of Dr. Milligan's opinion.

opinions regarding Lavoie's exertional and nonexertional limitations.  He opined, for example, that emotional factors contributed to the severity of Lavoie's functional limitations. Tr. at 366.  He stated that Lavoie's pain and other symptoms were frequently severe enough to interfere with the attention and concentration needed to perform simple work tasks.  Tr. at 367.  And, he cited PT Herd's functional assessment, where PT Herd noted that Lavoie could only occasionally sit, stand, walk, bend, kneel, squat, reach, and drive, and was unable to climb. Tr. at 361, 367.

In discounting Dr. Milligan's opinion, the ALJ did not specifically address these various conclusions, cite contradictory medical opinions or evidence, or otherwise explain why these findings were unsupported by the record.[2]  See Tr. at 21.  Instead, the ALJ merely stated that Dr. Milligan's and PT Herd's conclusions were "not entirely consistent with or supported by the evidence of record."  Id.  This lack of specificity renders meaningful review impossible, and warrants a remand.  See Jenness, 2015 DNH 167, 16.

In an attempt to save the ALJ's decision, the Commissioner points to record evidence that conflicts with Dr. Milligan's

---

[2] Lavoie, by contrast, devotes nearly ten pages of her brief to citing laboratory findings, treatment notes, medical opinions and other records that arguably support Dr. Milligan's assessment.  Doc. No. 9 at 6-15.

opinions, and therefore supports the conclusion that Dr.
Milligan's opinions were not entitled to controlling weight.
She cites, for example, a number of treatment records that
allegedly undermine Dr. Milligan's conclusion that Lavoie's pain
and depression frequently interfered with her attention and
concentration.  Doc. No. 12-1 at 8-9.  This argument is
unpersuasive, however, because a reviewing court "cannot uphold
the ALJ's decision based on rationales unarticulated in the
record." Laplume v. Astrue, 2009 DNH 112, n.20; Perry v.
Colvin, 2015 DNH 117, 11-12.  Indeed, it is a "simple but
fundamental rule of administrative law" that "a reviewing court,
in dealing with a determination or judgment which an
administrative agency alone is authorized to make, must judge
the propriety of such action solely by the grounds invoked by
the agency." Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S.
194, 196 (1947).  Thus, I am "powerless to affirm the
administrative action by substituting what [I] consider[] to be
a more adequate or proper basis." Id.  As such, the fact that
there may be substantial evidence in the record to support the
ALJ's decision does not absolve the ALJ of his responsibility to
undertake the analysis in the first place.  See Dube v. Astrue,
781 F. Supp. 2d 27, 36 (D.N.H. 2011) (citations omitted).

Simply put, the ALJ did not provide a sufficiently clear
basis to discount Dr. Milligan's opinions.  And, as such, a

remand is required.  See 20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); Lord v. Apfel, 114 F. Supp. 2d 3, 14 (D.N.H.

2000).  On remand, it is possible that the Commissioner will

again conclude that Dr. Milligan's opinion was not entitled to

controlling weight, and that Lavoie was not disabled.  In order

to do so, however, the Commissioner must demonstrate that she

has complied with the applicable regulations, and considered all

relevant evidence in the record.[3]


## IV. <u>CONCLUSION</u>

For the foregoing reasons, I deny the Commissioner's motion

to affirm (Doc. No. 12), grant Lavoie's motion to reverse (Doc.

No. 9), and remand the case for further proceedings pursuant to

the fourth sentence of 42 U.S.C. § 405(g).  The clerk is

directed to enter judgment accordingly and close the case.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

December 28, 2015

cc:  Raymond J. Kelly, Esq.
     Robert J. Rabuck, Esq.

---

[3] Because I remand the case on this basis, I need not address
Lavoie's other arguments.